IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BILLY WAYNE MILLER,

    Plaintiff,

v.                                        No. 10-1314

DRUG ENFORCEMENT ADMINISTRATION,

    Defendant.

MEMORANDUM OPINION

*INTRODUCTION*

This action was initiated in December 2010 by the Plaintiff, Billy Wayne Miller, against Defendant Drug Enforcement Administration ("DEA") to set aside forfeiture of certain funds. Miller maintains that he is entitled to the return of $182,064.95 in United States currency pursuant to 18 U.S.C. § 983(c) as he is the rightful owner thereof. He avers that the Government knew or reasonably should have known of his interest in the funds and failed to take reasonable steps to provide him with notice. Further, the Plaintiff contends that he did not know or have reason to know of the seizure of the funds within sufficient time to make a timely claim. It is the position of the Defendant that Miller cannot establish that he is a "person entitled to written notice" as contemplated by § 983(e)(1). The DEA also maintains that Plaintiff had actual notice of the seizure of the subject currency to make a timely claim and failed to do so.

The Court tried the civil action without a jury on May 24, 2012. Rule 52 of the Federal Rules of Civil Procedure requires that, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

In accordance with the Rule, the Court finds and states the following.

*FINDINGS OF FACT*

On or about April 20, 2007, officers with the Jackson, Tennessee Police Department commenced investigation of a theft of property from Jackson Wellness Clinic. Sergeant Marla Taylor, who was assigned to the case, took a report from the victim, the Plaintiff in this case. He advised that a black Tournamax bag had been stolen.[1] According to Miller, the bag contained a large amount of cash, antique jewelry and coins, and credit cards. He identified the thieves as Bethany April Thompson and Claude Allen Wells.

Five days after the theft, Thompson and Wells were arrested in Oceanside, California and the currency in their possession was seized. Over the next couple of days, Officer Taylor learned in a series of phone calls with Detective Brian Bruce of the Oceanside Police Department that Bruce planned to seize the money as drug proceeds. On May 7, 2007, the DEA office in San Diego, California adopted the seizure and subsequently submitted a report to the office of DEA's Forfeiture Counsel, which accepted the case for administrative forfeiture.

Within a few days of the arrest, Miller asked Taylor when his funds would be returned. She passed on to him the information received from Bruce and advised Miller thusly: "[W]e would have to wait. At this point in time it was, you know, evidence either of the crime committed here in Jackson or the crime that occurred in California. That they would retain that evidence, and at some point we would find out the disposition." Taylor was informed by Bruce that the DEA would attempt to seize the moneys, which would be shared with Oceanside. According to Taylor, final

---

[1] According to the testimony, a Tournamax bag is a nylon duffel bag with a locking mechanism.

word from Bruce that DEA would make a seizure of the funds was received by her and transmitted to Miller within a month of the initial incident report. The report, which contained Plaintiff's personal contact information, was provided to the authorities in Oceanside. With respect to the seizure, Taylor advised Miller that "whatever arrangements there were to be made would be made between him and the DEA in California."

Miller spoke to Bruce directly by telephone. The Plaintiff testified at trial that the detective called him to advise that the money had been located and that he was working on getting it returned as soon as some paperwork was completed. He could not remember exactly when the conversation occurred. Miller related that Bruce made no mention of a forfeiture proceeding and he was not made aware of it until he was informed later by Sergeant Taylor. He recalled that she told him he would get something from DEA and would have to sign for it, but nothing ever came.

On May 31, 2007, DEA sent written notice of the seizure by certified mail, return receipt requested, to Thompson at Post Office Box 11431, Jackson, Tennessee 38308-0123. The United States Postal Service returned the notice, stamped "Return to Sender - Unclaimed" on June 18, 2007. DEA also sent written notice of the seizure to Thompson by certified mail, return receipt requested, at the Vista Detention Facility, 325 South Melrose Drive, Vista, California 92083-6696 on May 31, 2007. On June 5, 2007, an individual accepted delivery of the notice. Notice of the seizure was published in the Wall Street Journal, a newspaper of general circulation in the Southern District of California and the Western District of Tennessee, once a week for three successive Mondays: June 11, 18 and 25, 2007. On July 5, 2007, DEA sent written notice by certified mail, return receipt requested, to Wells at George Bailey Detention Facility, 446 Alta Road, Suite 5300, San Diego, California 92158-0002. Delivery was accepted on July 9, 2007.

The published and mailed notices explained the option of filing a claim with the DEA Forfeiture Counsel in order to contest the forfeiture action in the United States District Court. They advised that the deadline for filing a claim was August 9, 2007 or, if the mailed notice was not received, July 26, 2007. The published notices also provided information concerning the option of filing a petition for remission or mitigation of forfeiture. It is undisputed that no written notice of the seizure was mailed to the Plaintiff. On August 21, 2007, after no properly executed claim for the funds had been received, and after the time for filing a claim had expired, DEA declared the property administratively forfeited pursuant to 19 U.S.C. § 1609.[2]

---

[2]Section 1609 provides as follows:

(a) In general.

If no such claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the vessel, vehicle, aircraft, merchandise, or baggage forfeited, and shall sell the same at public auction in the same manner as merchandise abandoned to the United States is sold or otherwise dispose of the same according to law, and shall deposit the proceeds of sale, after deducting the expenses described in section 1613 of this title, into the Customs Forfeiture Fund.

(b) Effect

A declaration of forfeiture under this section shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States. Title shall be deemed to vest in the United States free and clear of any liens or encumbrances (except for first preferred ship mortgages pursuant to section 961 of Title 46, Appendix, or any corresponding revision, consolidation, and enactment of such subsection in Title 46) from the date of the act for which the forfeiture was incurred. Officials of the various States, insular possessions, territories, and commonwealths of the United States shall, upon application of the appropriate customs officer accompanied by a certified copy of the declaration of forfeiture, remove any recorded liens or encumbrances which apply to such property and issue or reissue the necessary certificates of title, registration certificates, or similar documents to the United States or to any transferee of the United States.

## CONCLUSIONS OF LAW

Actions to set aside forfeiture are governed by 18 U.S.C. § 983(e), which provides that

> [a]ny person entitled to written notice of any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if –
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1). A § 983 motion is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). The court "lacks jurisdiction to review the merits of the forfeiture determination, but can only review the procedures followed." In re: Seizure of $143,265.78 from Comerica Checking Account No. 1851349546 & $28,687.40 from Checking Account No. 1080022185, 616 F. Supp. 2d 699, 705 (E.D. Mich. 2009) (citing Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005)), *aff'd* 384 F. App'x 471 (6th Cir. 2010).

As the statute indicates, in order to succeed on a § 983(e) claim, Miller must show not only that the Defendant failed to take reasonable steps to notify him but also that he did not know or have reason to know of the seizure within sufficient time to file a timely claim. *See* Bentley v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 414 F. App'x 28, 31 (9th Cir. 2011) (Stafford, J., concurring). It is knowledge of the *seizure*, not the forfeiture action, that is critical. In re Sowell,

---

19 U.S.C. § 1609.

5

No. 08-51163, 2009 WL 799570, at *3 (E.D. Mich. Mar. 19, 2009). The statute does not require knowledge of the agency in possession of the property after the seizure. *See* Johnson v. United States, No. 1:03-CV-00281-LJM VS, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004). If a claimant has actual knowledge of the seizure, the second element of the § 983(e) claim is not satisfied. In re Seizure of $143,265.78, 616 F. Supp. 2d at 705.

> In his motion to set aside the forfeiture, the Plaintiff made the following allegation:
>
> The facts would further show that Dr. Bill Miller was contacted by Detective Bruce from the Oceanside, California Police Department and Miller was informed that Detective Bruce had confiscated [$]182,064.95 from Bethany April Thompson. The Plaintiff would show that Dr. Miller explained to Detective Bruce that he was not involved in the drug business and that he was a Doctor of Holistic Medicine and that Ms. Thompson along with her boyfriend, Claude Wells[,] conspired by forging a key and burglarizing his business while he was at lunch back in April of 2007. *Plaintiff would further show that Detective Bruce communicated with the Jackson Police Department specifically Sgt. Marla Taylor concerning the burglary of Dr. Bill Miller's building. The facts would further show that Detective Bruce informed Dr. Miller that the process for getting his money would be long and drawn out and that the money would be filtered possibly through the Internal Revenue Service, the Drug Enforcement Agency and any other Agency that could be involved in such circumstances.* The facts would affirmatively show that Detective Bruce knew absolutely that Dr. Bill Miller was a stake holder in this money. The facts would further show that notice of the seizure of this money was sent to April Thompson and possibly Claude Wells. The facts would show that Dr. Bill Miller in no way ever received any notice that his money was being seized. The facts would show that Detective Bruce along with the DEA knew that Dr. Miller was a stake holder in this money, knew his address, knew his phone number and despite this knowledge filed notice of seizure with the Wall Street Journal three times with the last time being approximately June, 2007. The facts would show that Bill Miller is not a drug dealer, did not drug April Bethany Thompson and is entitled to be heard on the ownership of his money.

(D.E. 1 at 7-8) (emphasis added). As a general rule, parties are bound by the admissions contained in their pleadings. *See* United States v. $80,891.25 in United States Currency, No. 4:11-cv-183, 2011 WL 6400420, at *1 (S.D. Ga. Dec. 19, 2011) (general rule that a party is bound by the admissions in his pleadings applied to statements made in complaint in asset forfeiture action).

6

It is clear from the admissions of the Plaintiff and the evidence presented at trial that, even if the Defendant failed to take reasonable steps to provide notice to Miller, the Plaintiff had actual notice of the seizure by authorities of the money itself by late May 2007, crediting the testimony of Officer Taylor. This was long before the time for filing a claim expired. Because he had actual knowledge of the seizure in time to make a timely claim therefor, the requirements of § 983(e) have not been met and the motion to set aside the forfeiture is DENIED.[3] *See* In re Sowell, 2009 WL 799570, at *3 (motion to set aside forfeiture denied where court found claimant had actual knowledge of seizure and, therefore, elements of § 983(e) had not been satisfied).

IT IS SO ORDERED this 1st day of October 2012.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[3]The arguments contained in Plaintiff's pretrial memorandum address the issue of whether he received adequate notice of the forfeiture proceedings. However, based on its conclusion that, any lack of formal notice notwithstanding, Miller had actual notice of the forfeiture, the Court need not analyze the contentions raised in the pretrial memorandum.